ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Sep-20  15:45:55
60CV-20-4813
C06D11 : 15 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

## CIVIL DIVISION

**JOYCE ASBERRY**                                                                                    **PLAINTIFF**

**VS.**                                       **CASE NO.: 60CV-20-4813**

**LITTLE ROCK SCHOOL DISTRICT**                                                   **DEFENDANT**

### AMENDED COMPLAINT

The Plaintiff, Joyce Asberry, by and through her attorneys, Mitchell, Blackstock & Sneddon PLLC, for her Amended Complaint against the Defendant, Little Rock School District, states:

#### Parties

1.  The Plaintiff, Joyce Asberry, is a resident of Little Rock in Pulaski County in the State of Arkansas.

2.  The Defendant, Little Rock School District (District), is a school district located in Little Rock, Pulaski County, Arkansas and is a political subdivision with the power to sue and be sued and the power to contract and to be contracted with pursuant to Ark Code Ann. § 6-13-102.

3.  Venue is appropriate in Pulaski County.

4.  This Court has jurisdiction over the Plaintiff's age claims under the Age Discrimination in Employment Act (ADEA) pursuant to 29 USC §626(c).

5.  The Plaintiff's Arkansas Age Discrimination Act claims (AADA) are brought pursuant to A.C.A. § 21-3-201

6.  The Plaintiff's Family Medical Leave Act (FMLA) claims are brought pursuant to 29 U.S.C. § 2615.

7. The Plaintiff's Americans with Disabilities Act (ADA) claims are brought pursuant to 42 U.S.C. § 12101, *et seq.*

8. The Plaintiffs retaliation claims are brought pursuant to Title VII, the FMAL, ADA and AADA.

9. The Plaintiff's race claims are brought pursuant to Title VII, 42 U.S.C. § 2000e-3.

10. The Plaintiff was employed by written contract with the District for the 2019-2020 school year as a certified teacher at McClellan High School. The Plaintiff has worked for the District for over 28 years. She worked at McClellan since the 2017-2018 school year. The Plaintiff's contract for 2019-2020, which includes all the personnel policies of the District, is voluminous and is in the possession of the District and therefore is not attached to the Complaint.

11. The Plaintiff was a non-probationary teacher as that term is used in the Arkansas Teacher Fair Dismissal Act (TFDA), Ark. Code Ann. § 6-17-1502(b).

12. The District is required to follow the TFDA in the nonrenewal of its licensed employees.

Facts – Hall High School, McClellan High School, J.A. Fair High School and Rockefeller (K-5)

13. On December 12, 2019, the Arkansas State Board of Education, voted to "reorganize" Hall High School and to require the District to require Hall High School to vacate all positions at Hall High School, require all staff to apply for any posted position in the District and, if they were not hired for a position, to non-renew their contracts.

14. At the end of the 2019-2020 school year, the District closed McClellan High School, J.A. Fair High School and Rockefeller (K-5), and at the start of the 2020-2021 school year, the District opened the new Southwest High School.

15. The District closed McClellan High School, J.A. Fair High School and Rockefeller (K-5) and encouraged all certified employees assigned to those schools to apply for open positions posted throughout LRSD at the earliest opportunity when advertised.

16. Licensed personnel who were previously employed at McClellan High School, J.A. Fair High School and Rockefeller (K-5) who were not hired for an open position for 2020-2021 had their contracts for 2019-2020 nonrenewed because they did not secure a position.

17. The licensed personnel at Hall, McClellan, J.A. Fair and Rockefeller whose positions were all declared vacant and who were encouraged to apply for other posted positions within the District, had to compete for the posted positions with licensed personnel from outside the District.

18. Not all positions at Hall and Southwest High School were posted as open positions, enabling the District to employ licensed personnel without having to consider applications from those whose positions had been declared vacant.

19. The Plaintiff was on a medical leave of absence during the Spring of 2020 when the District was posting open positions and was unable to apply on her own for the positions and therefore missed a number of positions.

20. Upon information and belief, the Plaintiff states that one or more of the job openings for which the Plaintiff applied were filled with substantially younger and less qualified employees who were treated more favorably than the Plaintiff.

21. Some posted positions at Hall and Southwest High School were filled without valid consideration of applicants other than the person chosen for and who previously held the position.

22. When the District closed schools in the past, a different process was followed. The process followed in the past ensured that the displaced employees from the closed school would be transferred to available positions (usually ones opened-up through attrition) before anyone from

outside the District was hired.

## Facts – Reduction in Workforce

23. Between the 2019-2020 and 2020-2021 school year the District experienced a reduction in its workforce, including a reduction in the number of licensed teachers.

24. During the 2019-2020 school fiscal year, the District projected a reduction in its licensed teacher workforce for 2020-2021.

25. This projection was based in part on anticipated student enrollment for 2020-2021, the closing of McClellan High School and J.A. Fair High Schools, the closing of Rockefeller K-5 and the opening of the new Southwest High School.

26. The reduction in licensed teachers from 2019-2020 to 2020-2021 was an unavoidable reduction in the District's licensed teacher workforce.

27. Normal attrition of licensed teachers each year in the District is usually between 100 to 150 licensed teachers.

28. The number by which the total number licensed teachers from 2019-2020 to 2020-2021 was reduced less than the normal attrition of licensed teachers.

## Nonrenewal of Plaintiff's Contract

29. On April 29, 2020, the District Superintendent recommended by written letter that the Plaintiff's contract will not be renewed for the next year. The Superintendent's stated reasons for his recommendation in the letter were:

> Your school will be closed at the end of the 2019-2020 school year. You were previously encouraged to apply for one of the many open positions, which existed within LRSD and notified that your failure to secure a position could result in your non-renewal.

30. On May 28, 2020, the Plaintiff requested a hearing under the Arkansas Teacher Fair Dismissal Act, and the hearing was held on June 10, 2020, following which the Community

4

Advisory Board, (the CAB), of the District voted to recommend the nonrenewal of Plaintiff's contract to the Secretary of Education, Johnny Key, who was acting as the School Board for the District.

31. At the hearing, the Community Advisory Board held that it would be irrelevant and inappropriate for them to consider or hear evidence about the Plaintiff's efforts to gain continued employment with the District and the reasons why the Plaintiff was not "hired" for various positions within the District, even though the notice of recommended nonrenewal listed as one of the reasons for nonrenewal her "failure" to secure another position.

32. By letter dated June 18, 2020, the Secretary of Education, acting as the School Board for the District, accepted the Community Advisory Board's recommendation that the Plaintiff's contract be nonrenewed effective immediately.

### Teacher Fair Dismissal Act -Substantive Claims

33. The Plaintiff could only be nonrenewed for the reasons set forth in the TFDA.

34. The nonrenewal of Plaintiff's contract violates the TFDA, Ark. Code Ann. § 6-17-1510(b), because the reasons for the adverse employment action did not meet any of the following criteria:

> .. Any licensed teacher who has been employed continuously by the school district three (3) or more years or who may have achieved nonprobationary status pursuant to § 6-17-1502 may be terminated or the board of directors may refuse to renew the contract of the teacher only when there is a reduction in force created by districtwide reduction in licensed personnel, for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause.

35. The Plaintiff was not nonrenewed for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties or repeated or material

neglect of duty.

36. The "just and reasonable" cause standard does not apply in this case because that standard only applies to some wrongdoing on the part of the teacher.

37. Alternatively, the Plaintiff's nonrenewal was neither just nor reasonable because:

   a. The Plaintiff was effectively terminated when her position at McClellan High School was vacated by the State Board.

   b. Vacating all the positions at Hall High School was simply an underhanded way for the school to get rid of those employees who it did not care for, including older employees, but for whom there was no justification for nonrenewal.

   c. If the process of vacating all positions and requiring all teachers to reapply were acceptable, any school district in the State could use this method to rid the school of teachers the district did not like but for whom it had no justification for nonrenewal.

   d. As a veteran teacher with the District the Plaintiff was forced to start her career over by applying for jobs and was forced to do so while she was on medical leave.

   e. There was a reduction in force in the District, but the District failed to follow its layoff policy and the law on layoffs.

   f. The underlying reason for the nonrenewal was the District's desire to employ new and younger teachers

   Teacher Fair Dismissal Act – Procedural Claims

38. Under the TFDA, Ark. Code Ann. § 6-17-1503(c), any nonrenewal, termination, suspension or other disciplinary action is void unless the District substantially complies with the TFDA and its own policies.

39. The District failed to comply with the TFDA and its own policies.

40. The TFDA requires notice and an opportunity for a hearing prior to a nonrenewal. Ark. Code Ann. § 6-17-1501 *et seq.*

41. The Plaintiff was effectively terminated without notice or a hearing when the State Board of Education voted on December 12, 2019, to vacate her position in violation of the TFDA.

42. The TFDA provides that any nonrenewal "shall only be upon the recommendation of the superintendent." Ark. Code Ann. § 6-17-1506(a)(3). This provision in the TFDA was designed to ensure that the school board, responsible for holding hearings on nonrenewal recommendations, did not, directly or indirectly, make or instigate the recommendation for nonrenewal.

43. The recommendation of nonrenewal sent to the Plaintiff in this case was signed by the Superintendent, but the recommendation itself came from the State Board of Education which directed the Secretary of Education, acting as the School Board for the District, to carry out their directive to nonrenew anyone who was not "hired" to another or "rehired" to their same position with LRSD.

44. The State Board of Education had no authority to direct the District to nonrenew employees who were not "hired" for a job by the District after their positions were declared vacant.

45. As such, the recommendation for nonrenewal was in violation of the TFDA.

46. The TFDA, Ark. Code Ann. § 6-17-1506(a)(2)(B), provides that the notice of recommended nonrenewal must include a statement of the reasons for the recommendation setting forth the reasons in separately numbered paragraphs so a reasonable teacher can prepare a defense.

47. The actual reason for the recommended nonrenewal was not stated in the notice - the reason for vacating all the positions was so the District would have the opportunity to weed out those licensed employees it did not want, even though it had no grounds for nonrenewal of those employees.

48. As such, the notice did not state the actual reason for the recommended nonrenewal in violation of the TFDA.

49. Under Ark. Code Ann. § 6-17-2407(b) a "layoff" is an unavoidable reduction in the workforce beyond normal attrition.

50. The District experienced a "layoff" from the 2019-2020 to the 2020-2021 school year as defined in Ark. Code Ann. § 6-17-2407(b).

51. Under Ark. Code Ann. § 6-17-2407(a) each school district shall have a written policy on reduction in force based upon objective criteria for a layoff and recall of employees.

52. Under Ark. Code Ann. § 6-17-2407(a) it is the public policy of the State that each school district shall have a written policy on reduction in force based upon objective criteria for a layoff and recall of employees.

53. The District's reduction in force policy, 3.4- Licensed Personnel Reduction in Force, states that it only applies when there is a reduction of "5% or more" of the "staff to be employed" next year "compared to the number employed at the end of the first semester" in the current year.

54. This provision of the District's reduction in force policy conflicts with the definition of layoff in Ark. Code Ann. § 6-17-2407(b) and is therefore invalid and unenforceable.

55. The District's reduction in force policy provides that when there is a reduction in force, the District shall accomplish the reduction "through attrition as far as possible" and that a "hiring freeze will be instituted immediately."

56. The District failed to accomplish the reduction through attrition and failed to institute a hiring freeze.

57. Had the District not hired numerous certified teachers from outside the district, the reduction could have been accomplished through attrition because the number of the reduction in positions was less than the normal attrition.

58. The District told the teachers whose positions were vacated that they would be given preference over hiring teachers from outside the District, but that was simply a platitude.

59. Had the District implemented its reduction in force policy consistent with the law on layoffs, the Plaintiff's contract would not have been nonrenewed.

60. Thus, in nonrenewing Plaintiff's contract, the District failed to substantially comply with the TFDA and its own policies.

61. The Plaintiff is entitled to reinstatement, back pay, benefits and costs.

62. The Plaintiff is entitled to attorney's fees pursuant to Ark Code Ann. § 16-22-308.

## Discrimination Claims

## AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) AND ARKANSAS AGE DISCRIMINATION ACT, TITLE VII SEX AND RACE DISCRIMINATION, AMERICANS WITH DISABILITIES ACT AND THE FAMILY MEDICAL LEAVE ACT

63. The Plaintiff's ADEA claims, Title VII claims, ADA, Arkansas Age Discrimination Act (AADA) and FMLA claims in this Amended Complaint are being filed within 90 days of receipt by the Plaintiff of the EEOC's Notice of Right to Sue.

64. The Plaintiff is an African American female over the age of 70.

65. Reference in this Amended Complaint to the ADA includes both the ADA and the AADA.

66. The Plaintiff claims of ADA and FMLA discrimination include a claim of retaliation for exercising her rights under the ADA 42 U.S.C. § 2000e-3 (Title VII), and FMLA, 29 U.S.C. § 2615 (FMLA).

67. The Plaintiff's claims under Title VII include claims of race discrimination and, on information and belief sex discrimination, to the extent that there were any positions filled by male applicants of which the Plaintiff is presently unaware.

68. At the time the Defendant recommended that the Plaintiff's contract with the District be nonrenewed, the Plaintiff was a long-term employee of the District who had been employed as a Family and Consumer Science teacher at McClellan High School since 2017.

69. At the time the Defendant recommended that the Plaintiff's contract with the District be nonrenewed, Plaintiff was on ADA leave and had been on FMLA leave.

70. The Plaintiff's FMLA and then ADA leave was initially from January 24, 2020, to April 24, 2020.

71. The Plaintiff qualified for both FMLA and ADA leave.

72. The Plaintiff was capable of performing the essential functions of her job with reasonable accommodations under the ADA.

73. The Plaintiff was scheduled for an ADA reasonable accommodation meeting on April 30, 2020.

74. That meeting was canceled because, even though the Plaintiff's contract had not been nonrenewed or terminated (an action that can only be taken by the District School Board) the Plaintiff has been sent, on April 29, 2020, a letter of recommended nonrenewal.

75. Thus, no reasonable accommodations were discussed with the Plaintiff and the Plaintiff was, therefore, unable to determine whether she could return to work for the rest of her

contract with a reasonable accommodation.

76. While the stated reasons for the nonrenewal of Plaintiff's contract was that her position had been vacated and she had failed to secure other employment within the District, the motiving factor was the Plaintiff's age.

77. Had the District followed its past practice of transferring employees to other positions when a position was vacated, the Plaintiff would have remained employed with the District.

78. The Plaintiff was informed that if she did not secure another position within the District her contract would not be renewed.

79. Other younger, similarly situated employees and non-employees of the District who did not have a disability and who had not filed a recent FMLA request, were treated more favorably than the Plaintiff.

80. Being over 70 years old, the Plaintiff is a member of a protected class within the meaning of ADEA and the Arkansas Age Discrimination Act, that being persons over the age of forty.

81. The Plaintiff met the applicable job qualifications for a number of positions with the District which positions opened up prior to and following the nonrenewal of her contract.

82. The Plaintiff submitted a job application in early May 2020, for any job for which she may be qualified, and the District knew that the Plaintiff wanted to remain with the District in a position for which she was certified.

83. The Plaintiff is certified in 9-12 Family and Consumer Science.

84. There are not many positions within the District for this certification.

85. There were five Family and Consumer Science Positions posted as available at Southwest High School with an application period of June 17 through June 21 and the Plaintiff was

fully qualified for these positions.

86. The five positions at Southwest High School were filled by:

   a. A lesser qualified, younger, female employee of the District who, on information and belief, did not have a disability and had not filed for FMLA leave and who was transferred from a middle school in the District to Southwest High School.

   b. A lesser qualified, younger female who, on information and belief, did not have a disability and who did not have a recent history of FMLA leave and who was hired from outside the District with no recent teaching experience.

   c. A lesser qualified, younger female employee of the District who, on information and belief, did not have a disability and had not filed for FMLA leave and who was transferred from McClellan High School to Southwest High School.

   d. A lesser qualified, younger female employee of the District who, on information and belief, did not have a disability and had not filed for FMLA leave and who was transferred from Hamilton Learning Academy to Southwest High School.

   e. A lesser qualified, younger, female employee, of a race unknown to the Plaintiff, of the District who, on information and belief, did not have a disability and had not filed for FMLA leave and who was transferred from JA Fair High School to Southwest High School.

87. There was one Family and Consumer Science Positions posted as available at Hall High School with an application period of June 23 through June 28 and Plaintiff was fully qualified

for this position but it was filled by a lesser qualified, younger female employee, of unknown race, of the District who, on information and belief, did not have a disability and had not filed for FMLA leave and who was transferred from Hall High School to Hall High School, keeping her existing position.

88. There was one Family and Consumer Science Positions posted as available at ALE Metro Vo-Tech with an application period of June 23 through June 28 and Plaintiff was fully qualified for this position, but it was filled by a lesser qualified, younger white female, who, on information and belief, did not have a disability and had not filed for FMLA leave.

89. There was one Family and Consumer Science Positions posted as available at Pinnacle View Middle School with an application period of May 4 through May 11 and Plaintiff was fully qualified for this position, but it was filled by a lesser qualified, younger white female, who, on information and belief, did not have a disability and had not filed for FMLA leave, who was transferred from JA Fair High School to Pinnacle View Middle School.

90. The Plaintiff suffered an adverse employment action, because the Defendant did not hire her for any of the numerous positions for which he was qualified.

91. The Defendant's refusal to hire the Plaintiff for any of the numerous positions for which she was qualified occurred under circumstances giving rise to an inference of discrimination based on age, race (where indicated) and /or disability.

92. Age, race (where indicated) and/or disability were the substantial motivating factors in the District's refusal to "hire" the Plaintiff for or transfer the Plaintiff to any of the numerous positions for which she was qualified.

93. Age was a factor in the District's requirement that the Plaintiff start her career over by "applying" for a position in the District rather than reassigning the Plaintiff to a position lost through

attrition.

94. The Plaintiff states on information and belief that the decision to vacate all positions at Hall High School, McClellan High School, J.A. Fair High School and Rockefeller (K-5) and require all certified employees to "reapply" for their position or some other position within the District had an adverse impact on the older employees in the District.

95. The District's actions constitute a willful violation of ADEA and the District acted in reckless disregard for whether its conduct violated ADEA, for all of which the Plaintiff is entitled to back pay and the value of lost benefits, for future lost income and benefits, front pay, and for liquidated damages in an amount equal to the actual damages awarded, for the District's willful conduct.

WHEREFORE, Plaintiff prays that the Court declare the District in violation of the TFDA, the ADEA, the Arkansas Age Discrimination Act, ADA and FMLA and its own policies, declare the District's action void, reinstate Plaintiff to a position for which she is qualified, award back pay and all attendant benefits which she would have received had she remained employed, award future lost earnings and liquidated damages, award pre- and post-judgment interest, attorney's fees, costs, and all other just and proper relief to which Plaintiff is entitled.

Respectfully Submitted,

_____
Clayton R. Blackstock, Bar No. 84013
Greg Alagood, Bar No. 84002
MITCHELL, BLACKSTOCK
& SNEDDON PLLC
1010 West Third Street
Little Rock, Arkansas 72201
Phone: (501) 378-7870
Fax:    (501) 375-1940

**Certificate of Service**

A true and accurate copy of the foregoing has been filed on the Arkansas Judiciary e-filing website on this 20th day of September 2021, and is to be forwarded to all counsel of record.

_____
Clayton R. Blackstock