```
1                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
2                         CENTRAL DIVISION

3  JOYCE ASBERRY

4              Plaintiff

5     Vs.                           No.  4:21-cv-00875-LPR
                                    August 1, 2023
6                                   Little Rock, Arkansas
   LITTLE ROCK SCHOOL DISTRICT
7
               Defendant
8
9

10

11     RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

12         BEFORE THE HONORABLE LEE P. RUDOFSKY

13             UNITED STATES DISTRICT JUDGE

14

15

16  APPEARANCES:

17  On Behalf of the Plaintiff:

18      MICHAEL MUSKHELI
        Mitchell Blackstock Wright & Alagood, PLLC
19      1001 West Third Street
        Little Rock, Arkansas 72201
20
    On Behalf of the Defendant:
21
        CHRIS J. HELLER
22      Friday, Eldredge & Clark, LLP
        400 West Capitol Avenue, Suite 2000
23      Little Rock, Arkansas 72201

24
        Proceedings reported by machine stenography and
25  displayed in realtime; transcript prepared utilizing
    computer-aided transcription.
```

1    THE COURT:  First, in terms of the sort of
2 factual background here, I am not going to go over all of
3 the factual background.  What I am going to do is adopt
4 what is admitted to with clean admissions.  And by "clean
5 admissions," I mean either the party saying, just admit,
6 or the party saying, I admit this much but no more.  I am
7 going to adopt the clean admissions in Document 38, which
8 is plaintiff's response to defendant's statement of
9 undisputed material fact, and the clean admissions in
10 Document 33, which is LRSD's response to plaintiff's
11 statement of undisputed material facts.
12    For purposes of the rulings I am going to make
13 today, I think that is sufficient as a background.  I
14 don't think there is anything further I need in terms of
15 background.
16    In terms of my ruling, here is why I am granting
17 defendant's summary judgment motion on the outstanding
18 claim, which is the disparate impact claims.  First, there
19 is what I will call a McDonnell-Douglas issue that
20 plaintiffs really can't surmount, at least down here at
21 the district court level.  And I'm referring to the case
22 set forth at 191 F.3d 948, Eighth Circuit.  I believe it's
23 1999, but don't quote me on the exact date.  And here is
24 the general issue.
25    In that case, the Eighth Circuit made it pretty

1  clear that in the Eighth Circuit a disparate impact
2  analysis can only be done on a basis of under 40 versus 40
3  and over, so on a full, I guess what I will call, older
4  worker group as opposed to subgroups within the over 40
5  range or the 40 and over range.
6        The problem there for plaintiffs, of course, is that
7  plaintiff's expert analysis -- their statistical analysis
8  is based on a group of older teachers, 60 and older.  And
9  while other circuits -- namely, the Third, but maybe some
10 others that I haven't seen -- say that's okay, it's not
11 okay yet in the Eighth Circuit.  And, in fact, the Eighth
12 Circuit has affirmatively ruled that it's not okay and you
13 can't do it by subgroup.
14       I think I made clear in my questioning today that
15 I'm not sure the McDonnell-Douglas decision comes out the
16 right way and is the right understanding of the relevant
17 statutory language and whatever gloss has already been
18 made in various other parts of disparate either treatment
19 or impact analysis by the Supreme Court, but that's an
20 issue that's above my pay grade.  The Eighth Circuit will
21 have to decide either whether it thinks that there's any
22 Supreme Court case that means they can sort of -- a
23 three-judge panel can overrule a prior panel or whether it
24 needs to take it en banc and wants to take it en banc to
25 consider overruling itself.  I personally don't think

1  there is any clear Supreme Court precedent that would
2  allow me to say the McDonnell-Douglas rule of the Eighth
3  Circuit doesn't apply.  So that's issue number one.
4      I'm tempted to stop there, but I am going to add one
5  more issue because I also think it is a fairly clear,
6  clean, legal issue that it will help if -- assuming this
7  case goes up to the Eighth Circuit, it will help if the
8  Eighth Circuit gives some guidance on, if it ends up -- if
9  the Eighth Circuit ends up sending the case back down here
10 again.  And this is what I am going to call the Clark V.
11 Matthews and McWhorter issue.
12     The Clark V. Matthews case is 628 F.3d 462.  In that
13 case, it's pretty clear that for a prime facie case, one
14 of the things that -- one of the burdens that is on the
15 plaintiff is to identify a specific facially neutral
16 policy or policies and statistically analyze the impacts
17 of that policy or policies on older workers.
18     I'm intentionally saying "older workers" here
19 because I'm trying to avoid the 40-year-old or 60-year-old
20 subgroup issue.  This is a sort of separate issue.
21 Obviously, there's some bleed over, but it's also a
22 separate issue.
23     The problem here for plaintiffs is what I believe is
24 a mismatch between the identified policy and the
25 statistical analysis that the plaintiffs have provided.

1  On one hand, if the policy is what I'm going to call the
2  five percent escape hatch used by the school district to
3  avoid the RIF law -- and I say that merely as a
4  descriptive matter, not suggesting whether or not that's
5  appropriate under current state law.  Let the state courts
6  deal with that.
7       But let me say this again now.  If the policy is the
8  five percent escape hatch used by the school district to
9  avoid the RIF law, then the statistics don't isolate the
10 effect of this policy on older workers because there is no
11 analysis that compares what actually happened to older
12 workers under this policy versus what would have happened
13 under a RIF.
14      I think, as far as I can tell, the plaintiff's
15 response to that is, essentially, common sense dictates
16 what would have happened under the RIF, and that it's that
17 all of the older workers in the district would have kept
18 their job.  I just don't think common sense here is sort
19 of what is necessary under the law.  I think I need real
20 evidence in front of me in terms of both what would have
21 happened and the statistical analysis between those two
22 worlds.
23      If on the other hand, the specific facially neutral
24 policy is instead thought of as a combination of
25 displacement plus the subjective hiring decisions of

1  individual schools or principals -- so in this situation,
2  it would be both the decision to displace the teachers at
3  the closed schools and the vacated school or the vacated
4  position at the school that didn't close, plus the sort of
5  hiring decisions of each school or principal in the new
6  schools or the reconstituted school.  If that's the kind
7  of facially neutral policy, then there is a -- what I'm
8  going to call a McWhorter problem, referring to McWhorter
9  against Maynard from the Western District of Arkansas.
10        That case cited, among other cases, the
11 McDonnell-Douglas case, and it explained the need for
12 analyzing the difference between the number of older
13 teachers that were there before the facially-neutral event
14 occurred and the number of older teachers that ended up in
15 all of these new schools -- hired into all of these new
16 positions.  I don't think the plaintiff's expert has done
17 that.
18        The problem there is, among other problems, we don't
19 know, for example, if many older workers who were
20 displaced and applied for these new jobs were not hired,
21 but they weren't hired because other 60-year-old or other
22 70-year-old workers were hired from outside the district.
23 That may be some kind of problem, but it's not a disparate
24 impact problem potentially.
25        Of course, I don't know the differences.  I don't

1  know the numbers, I don't know the statistics because they
2  weren't provided by plaintiff's counsel and by the expert.
3      I think those are the real hard core legal issues
4  for this to go up to the Eighth Circuit the first time on.
5  And, hopefully, the Eighth Circuit will give answers on
6  both -- arguably there are three issues in here, maybe
7  two.  Whatever there are, hopefully, the Eighth Circuit
8  will give us answers on all of them.
9      And I guess on one hand, they could affirm me and the
10 case goes away, at least this iteration of the case.  On
11 the other hand, the Eighth Circuit could change course on
12 the McDonnell-Douglas issue and could provide a little bit
13 more clarity on the -- what I guess I'll call the
14 Clark/McWhorter issues, and it will come back here and
15 we'll see -- the case will come back down here and we'll
16 see where to go from there.
17                       * * * * *
18                   REPORTER'S CERTIFICATE
19     I, Valarie D. Flora, FCRR, RPR, certify that the foregoing
20 is a correct transcript of proceedings in the above-entitled
21 matter.
22     Dated this the 1st day of August, 2023.
23 /s/ Valarie D. Flora, FCRR
24 -------------------------
25 United States Court Reporter